## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KINJI SCOTT,

        *Plaintiff*,

    **v.**

ERIKA MALONE, *et al.*,

        *Defendants*.

Civil No.: 8:25-cv-01587-JRR

## <u>MEMORANDUM OPINION</u>

Pending before the court is Plaintiff's Motion for Equitable Tolling of Filing Deadline (ECF No. 7) and Defendants' Motion to Dismiss.  (ECF No. 21; the "Motion.")  The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For the reasons set forth below Plaintiff's Motion for Equitable Tolling of Filing Deadline will be denied as moot, and Defendants' Motion will be granted.

## I.    <u>BACKGROUND</u>[1]

*Pro se* Plaintiff Kinji Scott is a 55-year-old African American resident of Baltimore, Maryland.  (ECF No. 1 ¶ 1.)  Plaintiff asserts he is disabled and receives Social Security Disability Insurance ("SSDI") benefits for his disability.  *Id.* ¶ 5.  A letter attached to Plaintiff's Complaint from his doctor indicates that he has been treated for depression, "which has been disabling" and that Plaintiff has "multiple functional limitations related to his depression," including difficulty performing self-care activities, routine tasks, and "difficulties with memory, attention and concentration[.]"  (ECF No. 1-3 at p. 1.)  Plaintiff is a "graduating student" of Mercer County

---

[1] For purposes of resolving the Motion to Dismiss, the court accepts as true all well-pled facts set forth in the Complaint at ECF No. 1 and supplements thereto at ECF Nos. 9, 14, and 17.  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

Community College's Funeral Service program. (ECF No. 1 ¶ 5.) As part of the program, Plaintiff arranged to complete a "barter-based apprenticeship with a licensed Maryland funeral director, John Williams" of John Williams Funeral Home. *Id.* ¶ 9.

Plaintiff completed his apprenticeship with Mr. Williams "by exchanged services instead of receiving wages." *Id.* ¶ 10. He alleges that a barter arrangement was necessary because his SSDI disability status limits his ability to engage in full-time paid employment without risk of loss of his housing and healthcare benefits. *Id.* On or about September 27, 2024, Plaintiff submitted his final apprenticeship paperwork to Licensing Coordinator Ashley Combs for review by Defendant the Maryland Board of Morticians and Funeral Directors (the "Board"), the licensing authority for funeral directors in Maryland. *Id.* ¶¶ 7, 11. The Board operates under the Maryland Department of Health, also a named Defendant. *Id.* ¶ 7.

On September 28, 2024, Defendant Erika Malone, Executive Director of the Board, informed Plaintiff that "student apprentices are not recognized in Maryland[.]" (ECF No. 1 ¶ 12.) Plaintiff alleges that Defendant Malone later cited "an alleged employment issue" as the basis for declining to recognize his apprenticeship. *Id.* Plaintiff asserts that Maryland law "permits student apprenticeships and does not prohibit barter-based arrangements." *Id.* ¶ 13. Plaintiff further alleges that, notwithstanding his completion of all academic and apprenticeship requirements, Defendants "failed to provide a reasonable accommodation for Plaintiff's disability" by failing to recognize his apprenticeship and denying him eligibility to proceed in the licensure process, including sitting for the National Board Examination ("NBE"). *Id.* ¶¶ 14–15.

On May 16, 2025, Plaintiff filed the instant Complaint (ECF No. 1), which asserts the following claims:

Count I: Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132);

Count II: Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794);

Count III: Violation of Maryland Anti-Discrimination Law (MD. CODE ANN., STATE GOV'T § 10-1103).

(ECF No. 1 ¶¶ 16–24.)  Plaintiff seeks declaratory and injunctive relief, compensatory damages of not less than $150,000, punitive damages against Defendant Malone in her individual capacity, costs, expenses, and attorneys' fees, and other relief "as the [c]ourt deems just and proper."  *Id.* at p. 4.[2]

On May 21, 2025, Plaintiff filed a Motion for Equitable Tolling of Filing Deadline (ECF No. 7) seeking equitable tolling of any statutory or administrative deadlines.  On June 30, 2025, Defendants filed their Motion.  (ECF No. 21.)  Plaintiff filed a response on July 21, 2025.  (ECF No. 23.). Defendants filed their reply on August 4, 2025.  (ECF No. 24.)

## II.    <u>LEGAL STANDARDS</u>

### A. Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction."  *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction."  *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019).  Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge.  *Id.*  A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction."  *Id.*  A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true."  *Id.* (quoting *Kerns v. United States*, 585

---

[2] In a supplement to the Complaint, Plaintiff states that he "withdraws any prior fixed monetary demand, including the request for $150,000 in compensatory damages" and his "primary and preferred form of relief" is the issuance of a Maryland Funeral Service License.  (ECF No. 17-1 at p. 1.)  Plaintiff has submitted several supplements to his Complaint.  (ECF Nos. 9, 14, 17.)

F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

Defendants raise a facial challenge to the court's subject matter jurisdiction, asserting that Eleventh Amendment sovereign immunity bars Plaintiff's claim under Title II of the ADA against Defendants. (ECF No. 6-1 at pp. 7–9.) The defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). "Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

## B.  Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, "a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and

drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of the complaint. The court may, however, consider "documents integral to and relied upon in the complaint, ... so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court

'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment. *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on the state and federal government websites.").

Plaintiff attaches numerous exhibits to his Complaint and supplements thereto.  In response to Plaintiff's allegations that he is disabled and that Defendants failed to reasonably accommodate his disability, Defendants rely on a letter from Plaintiff's treating physician attached to Plaintiff's Complaint describing his disability and its functional limitations.  (ECF No. 1-3 at p. 1.)  The court finds that this letter is integral to the Complaint because Plaintiff relies on it to describe and demonstrate his ADA qualifying disability (a requirement to recover under the ADA), and Plaintiff does not question its authenticity.  The court does not discern that the other exhibits attached to Plaintiff's Complaint or supplements are integral to Plaintiff's Complaint, and declines to consider them to evaluate the Motion under Rule 12(b)(6).

## III.    <u>ANALYSIS</u>

As an initial matter, the court is ever mindful that pro se filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards than filings drafted by lawyers. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v. Paradus*, 551 U.S. 89, 94 (2007); FED. R. CIV. P. 8(f); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022).  Such liberal construction, however, does not absolve Plaintiff from

pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### A. Plaintiff's Motion for Equitable Tolling of Filing Deadline

Plaintiff's Motion for Equitable Tolling of Filing Deadline seeks equitable tolling of any statutory or administrative deadlines to permit the filing of his Complaint. (ECF No. 7.) Plaintiff asserts that he was misled "by representatives of the Maryland Department of Health's Equal Employment Opportunity Office . . . into believing that he was participating in a formal [federal] Equal Employment Opportunity ('EEOC') investigation." *Id.* ¶ 1. He now seeks equitable tolling of the deadline to file a timely charge of discrimination with the EEOC. *Id.* ¶ 5. Defendants did not file a response to the motion.

"Title II of the ADA does not contain an administrative exhaustion requirement." *Pathways Psychosocial v. Town of Leonardtown, MD*, 223 F. Supp. 2d 699, 713 (D. Md. 2002); *see also Magness v. Harford Cnty.*, No. CV ELH-16-2970, 2018 WL 1505792, at *10 (D. Md. Mar. 27, 2018) (finding that "Title II of the ADA does not require administrative exhaustion.") (collecting cases). Moreover, the Rehabilitation Act does not require administrative exhaustion by non-federal employees. *See Bowman-Cook v. Wash. Metro. Area Transit Auth.*, DKC-14-1877, 2017 WL 3592450, at *5 n.4 (D. Md. Aug. 21, 2017) ("Non-federal employees are not required to exhaust any administrative remedies under the Rehabilitation Act[.]"); *Harris v. O'Malley*, WDQ-13-2579, 2015 WL 996557, at *5 (D. Md. Mar. 4, 2015) ("'[C]ourts have uniformly held that non-federal employees need not exhaust administrative remedies before bringing a private action under

Section 504'" of the Rehabilitation Act.) (citation omitted).  Whereas Plaintiff is not a federal employee, his ADA and Rehabilitation Act claims are not subject to administrative exhaustion, and he need not file a charge with the EEOC to proceed with those claims (Counts I and II) in this court.

> With respect to statutes of limitation for filing a court action:

>> The ADA and Rehabilitation Act do not provide a statute of limitations.  Accordingly, courts "borrow" the most appropriate or analogous state statute of limitations and apply it to the federal cause of action.  *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011), *cert. denied*, 566 U.S. 937, 132 S.Ct. 1960, 182 L.Ed.2d 772 (2012).  Maryland courts apply the three-year limitations period governing general civil actions to ADA and Rehabilitation Act claims.  *Schalk v. Associated Anesthesiology Practice*, 316 F.Supp.2d 244, 251 (D. Md. 2004); *Kohler v. Shenasky*, 914 F.Supp. 1206, 1211 (D. Md. 1995).

*Jeandron v. Bd. of Regents of Univ. Sys. of Maryland,* 510 F. App'x 223, 226 (4th Cir. 2013). Here, the alleged discrimination occurred on September 28, 2024, and Plaintiff filed his Complaint less than a year later, on May 16, 2025.  Therefore, Plaintiff did not miss the applicable three-year statutory deadline for filing his ADA and Rehabilitation Act claims.

Accordingly, Plaintiff's Motion for Equitable Tolling of Filing Deadline will be denied as moot.[3]

### B.  Defendants' Motion to Dismiss

Defendants argue that all of Plaintiff's claims should be dismissed because: (1) Plaintiff's ADA and Rehabilitation Act claims (Counts I and II) fail to state claims upon which relief can be granted; (2) Plaintiff's ADA and Rehabilitation Act claims are precluded as against Defendant Malone in her individual capacity; (3) Plaintiff's state law claim (Count III) fails to state a claim

---

[3] The court does not discuss whether Count III of Plaintiff's Complaint under MD. CODE ANN., STATE GOV'T § 10-1103 is subject to a statute of limitations or administrative exhaustion.  As discussed *infra*, Plaintiff effectively abandons this claim, and the record suggests that Plaintiff may not have intended to rely on the cited statute.

upon which relief can be granted; (4) Eleventh Amendment sovereign immunity bars Plaintiff's ADA claim; and (5) Plaintiff has failed to effectuate service on Defendants.  (ECF No. 21-1 at pp. 4–12.)

The court begins by addressing Defendants' arguments as to Plaintiff's ADA and Rehabilitation Act claims.

### 1.  *Counts I and II – ADA and Rehabilitation Act Claims*

#### a.  Eleventh Amendment Sovereign Immunity

Defendants argue that Plaintiff's ADA claim (Count I) is barred by Eleventh Amendment sovereign immunity.  (ECF No. 21-1 at pp. 8–11.)  Plaintiff responds that Defendants are not entitled to Eleventh Amendment sovereign immunity or qualified immunity because he "seeks prospective injunctive and declaratory relief to correct ongoing violations."  (ECF No. 23 at p. 11.)  The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. AMEND. XI.   Under the Eleventh Amendment, states generally enjoy immunity from suit unless a state waives its immunity, or the immunity is abrogated by Congress.  *See Bd. of Tres. v. Garrett*, 531 U.S. 356, 363–64 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.  We have recognized, however, that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." (citations omitted)); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019) ("[S]tate sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it.").

A finding that a defendant enjoys sovereign immunity on a claim presents a jurisdictional bar to the court's adjudicative power over such a claim. *Cunningham v. General Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018).

Sovereign immunity also operates to bar suit against state agencies. *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–102 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). As relayed above, MDH is a "principal department" of Maryland state government and the Board operates within MDH. MD. CODE ANN., HEALTH-GEN. § 2-101; MD. CODE ANN., HEALTH OCC. § 7-201 ("There is a State Board of Morticians and Funeral Directors in the Department."). MDH is therefore a state agency entitled to sovereign immunity.

Plaintiff asserts Defendant Erika Malone is Executive Director of the Board and is being sued in both her official and individual capacities. (ECF No. 1 ¶ 6.) Relevant here, "[l]awsuits against state officials in their official capacities . . . are the equivalent of suits against the state itself." *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 167 (D. Md. 2022); *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (instructing that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office") (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)); *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., Virginia*, 355 F. Supp. 3d 386, 399–400 (E.D. Va. 2018) (explaining that "because a state official sued in his official capacity stands in for the entity he represents, he is equally entitled to assert that entity's sovereign immunity from suit."). "In contrast, the Eleventh Amendment does not bar 'an award of damages against an official in his

personal capacity [that] can be executed only against the official's personal asserts.'" *Adams v. Ferguson*, 884 F.3d 219, 224–25 (4th Cir. 2018) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

"The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. 2022); *Anderson v. Dep't of Pub. Safety & Corr.*, No. 24-1339, 2024 WL 4814882, at *1 (4th Cir. Nov. 18, 2024) (identifying the three Eleventh Amendment immunity exceptions).  The three exceptions include:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 [121 S. Ct. 955, 148 L.Ed.2d 866] (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law.  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 [124 S. Ct. 899, 157 L.Ed.2d 855] (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court.  *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 [122 S. Ct. 1640, 152 L.Ed.2d 806] (2002).

*Doe.*, 595 F. Supp. 3d at 409 (quoting *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012)).

By way of background, "Title II forbids public entities—including State and local governments and their departments, agencies, or instrumentalities, 42 U.S.C. § 12131(1)—from excluding disabled persons from programs, services, or benefits 'by reason of' their disabilities." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 488 (4th Cir. 2005) (quoting 42 U.S.C. § 12132).  "Title II also imposes an affirmative obligation to make 'reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or

transportation barriers, or the provision of auxiliary aids and services' to enable disabled persons to receive services or participate in programs or activities." *Id.* (quoting 42 U.S.C. § 12131(2)).

As to the first immunity exception, the ADA provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. "This provision clearly and unambiguously expresses congressional intent to abrogate the States' Eleventh Amendment immunity with respect to claims brought under the ADA." *Constantine*, 411 F.3d at 484. Thus, under the first exception, the question becomes "whether Congress had the power to give effect to its intent." *Id.* (quoting *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). Accordingly, "Title II of the ADA abrogates the States' Eleventh Amendment immunity only if its enactment represents a valid exercise of authority under § 5 of the Fourteenth Amendment." *Id.* In evaluating whether Title II of the ADA validly abrogates Defendants' sovereign immunity under § 5 of the Fourteenth Amendment, the Supreme Court has instructed lower courts to apply a three-part test that considers:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as much misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006).

Although the parties dispute whether Defendants' sovereign immunity has been abrogated with respect to Plaintiff's ADA claim, the court need not resolve that issue here. Plaintiff alleges, and Defendants do not contest, that MDH is a state agency that receives federal funding. (ECF No. 1 ¶ 21.) The Fourth Circuit has held "that state agencies that knowingly and willingly accept clearly conditioned federal funding validly waive their Eleventh Amendment immunity with

respect to claims for damages under § 504 of the Rehabilitation Act." *Spencer v. Earley*, 278 F. App'x 254, 259 n.3 (4th Cir. 2008) (citing *Constantine*, 411 F.3d at 495–96); *see also* 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.") Accordingly, Plaintiff's claim under § 504 of the Rehabilitation Act is not barred by the Eleventh Amendment and the court has subject matter jurisdiction over this action independent of whether Defendants are immune from Plaintiff's ADA claim.

Here, Plaintiff asserts effectively the same claim under both statutes and seeks the same relief. (ECF No. 1 at pp. 3–4.) "Title II of the ADA explicitly provides that '[t]he remedies, procedures, and rights' provided under § 504 of the Rehabilitation Act 'shall be the remedies, procedures and rights [that Title II of the ADA] provides to any person alleging discrimination on the basis of disability . . .'" *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 551 (D. Md. 2019) (quoting 42 U.S.C. § 12133). As such, "Defendants vulnerability to suit under Section 504 of the Rehabilitation Act precludes them from asserting that defense against [Plaintiff's] identical Title II claims." *Id.* at 554 (finding that "it would make little sense to hold, on the one hand, that Defendants are susceptible to suit under Section 504, but on the other hand, that they are immune to Plaintiffs' legally indistinguishable ADA claims."); *see Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005) (holding that the court need not address the issue of abrogation under Title II of the ADA because the Rehabilitation Act claim was not barred by sovereign immunity and afforded the same rights and remedies).

The remaining question then is whether Plaintiff states a claim for prospective relief against Defendant Malone for an ongoing violation of federal law. "[S]uits for 'prospective injunctive

relief against state officials acting in violation of federal law' are permitted" pursuant to the *Ex parte Young* exception. *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 168 (D. Md. 2022) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "Under this limited exception, a federal court may issue prospective, injunctive relief against a state official to prevent ongoing violations of federal law, such as when the state officer is enforcing, or threatening to enforce, an allegedly unconstitutional state law." *Id.* "To invoke the exception, the plaintiff must identify and seek prospective equitable relief from an ongoing violation of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), *aff'd*, 589 U.S. 248 (2020) (emphasis in original). The exception "'does not apply when the alleged violation of federal law occurred entirely in the past,' but applies when '(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective.'" *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747 (4th Cir. 2018) (citations omitted); *see Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (same).

Here, Plaintiff may seek prospective, injunctive relief against Defendant Malone even if sovereign immunity were to bar Plaintiff's ADA claim for monetary damages. Plaintiff seeks prospective mandatory injunctive relief, as he seeks "an injunction compelling Defendants to recognize Plaintiff's apprenticeship and permit him to take the NBE and complete licensure[.]" (ECF No. 1 at p. 4.)

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's ADA claim on sovereign immunity grounds will be denied.

b. <u>Individual Liability</u>

Defendants also argue that Plaintiff's ADA and Rehabilitation Act claims as against Defendant Malone in her individual capacity must be dismissed because neither statute permits

"actions against persons in their individual capacities." (ECF No. 24 at p. 5.) Plaintiff fails to respond to, and thus concedes, this argument. Nonetheless, "Title II of the ADA does not recognize a cause of action for discrimination by private individuals, only public entities." *Pathways Psychosocial v. Town of Leonardtown, MD*, 133 F. Supp. 2d 772, 780 (D. Md. 2001). Similarly, "individuals are not subject to liability under Section 504 [of the Rehabilitation Act]." *Lewis v. Bd. of Educ. of Kent Cnty.*, No. JFM 07-955, 2007 WL 2343659, at *1 (D. Md. Aug. 14, 2007); *see also Andrews v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. 1:23-CV-00172-JMC, 2024 WL 520038 (D. Md. Feb. 9, 2024) (finding that plaintiffs could not allege a violation of the ADA or Rehabilitation Act against any of the individual defendants); *Polido v. Crowley*, No. 8:23-CV-00459-PX, 2024 WL 263578 (D. Md. Jan. 24, 2024) (holding that the ADA and Rehabilitation Act "do not cover individual capacity suits.").

Accordingly, Plaintiff's ADA and Rehabilitation Act claims (Counts I and II) against Defendant Malone in her individual capacity will be dismissed.

### c. Failure to State a Claim

Plaintiff argues that Defendants denial of his apprenticeship application was due to the Board's "refusal to engage in any reasonable accommodation process" after Plaintiff disclosed his disability and despite Plaintiff meeting all statutory perquisites for apprenticeship licensure. (ECF No. 23 at p. 14.) Defendants do not assert that Plaintiff does not have a disability. Rather, Defendants argue that Plaintiff's ADA and Rehabilitation Act claims "must fail because he fails to allege that he was excluded from participation in or denied the benefits of a public service, program, or activity or he was otherwise discriminated against on the basis of his disability." (ECF No. 21-1 at p. 5.) "[S]pecifically, Plaintiff fails to allege sufficient facts to show that his disability is connected to the accommodation sought." *Id.*

15

As discussed *supra*, under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefit's of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).  Because the analysis of claims arising under either statute "is substantially the same," courts may consider them in tandem. *White v. City of Annapolis*, 439 F. Supp. 3d 522, 542 (D. Md. 2020).

To state a claim under Title II of the ADA or the Rehabilitation Act, a plaintiff must plausibly allege: (1) he has a disability; (2) he was excluded from participation in, or denied the benefits of, a public entity's services, programs, or activities for which he was otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability.  *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–503 (4th Cir. 2016).  The ADA and Rehabilitation Act "differ only with respect to the third element, causation"—the ADA requires "only that the disability was a motivating cause" of the exclusion, and the Rehabilitation Act requires a plaintiff show exclusion "solely by reason of his disability." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012).  The Fourth Circuit has recognized "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Baltimore Cty., MD*, 515 F.3d 356, 362 (4th Cir. 2008).  Counts I and II center on Defendants' failure to make reasonable accommodations.

Maryland law requires an individual to be "licensed by the Board before the individual may practice funeral direction" in the state. MD. CODE ANN., HEALTH OCC. § 7-302. To submit an application for licensure, an individual must meet the qualifications set forth in § 7-303(b), which requires, among other things, that the individual "[h]as completed not less than 1 year and not more than 4 years of licensed apprenticeship[.]" *Id.* § 7-303(b)(2). Pursuant to § 7-306, "[a]n individual shall obtain an apprentice license from the Board before beginning an apprenticeship in [Maryland]." *Id.* § 7-306(a). Further, the statute requires a funeral director apprentice to have an apprentice sponsor who "(I) [i]s a licensed mortician or funeral director whose license is in good standing with the Board; and (II) [i]s employed by the same funeral establishment that employs the apprentice." *Id.* § 7-306(b)(2); *see also* COMAR 10.29.09.03(A)(1) ("To meet the apprenticeship requirements set forth in in Health Occupations Article, § 7-306, Annotated Code of Maryland, an applicant for a mortician's or funeral director's license shall be . . . [e]mployed in the same Maryland establishment as the applicant's sponsor or the sponsor's delegate[.]"

Defendants point the court to *Manson v. Maryland State Bd. of Physicians* for the proposition that "the ADA and Rehabilitation Acts require a connection between the accommodation of modification requested and the claimed disability." No. 1:20-CV-03345-SAG, 2021 WL 2352285, at *5 (D. Md. June 9, 2021). As Judge Gallagher explained:

> [T]he purpose of a reasonable accommodation under the ADA and Rehabilitation Act is to accommodate the seeker's disability and allow him to equal access an institution's services, programs, or benefits that he might otherwise have difficulty accessing due to his disability. *See, e.g.*, *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 556 (D. Md. 2019) (stating that accommodations under ADA Title II are provided to ensure disabled individuals equal access to various facets of prison life); *Constantine*, 411 F.3d at 488 ("In the context of public higher education, Title II requires state colleges and universities to make reasonable accommodations for disabled students to ensure that they are able to participate in the educational program."). There must,

17

then, be some alleged link between the accommodation requested and the disability claimed, since the accommodation is meant to enable the disabled individual to overcome that disability to achieve equal access in some way.  The plain language of the statute confirms that the accommodation (or modification) sought must be related to the disability in question.

*Id.* at *4.

In *Manson*, the plaintiff was diagnosed with autism spectrum disorder, which he asserted was a qualifying disability under the ADA and the Rehabilitation Act.  *Id.* at *1.  The plaintiff's application for a medical license had been denied by the defendant due to omissions on his licensing application, unrelated to his disability; the denial was reported to a number of national databases.  *Id.*  The plaintiff was unable to obtain employment due to the licensure denial report. *Id.*  As a result, he submitted a request for reasonable accommodation under Title II of the ADA to the defendant, explaining his autism diagnosis and requesting that the defendant void his licensure denial reports "to allow [him] to be employed in teaching or law[.]"  *Id.*  The defendant did not formally respond to the plaintiff's request and he subsequently filed suit claiming, *inter alia*, "that [d]efendant acted in violation of federal law when it failed to respond to [p]laintiff's accommodation request seeking to remove the report of his licensing denial from various databases."  *Id.* at *3.

Ultimately, Manson's ADA and Rehabilitation Act claims were dismissed because there were "no allegations supporting the conclusion that removal of the reports from public databases would accommodate [p]laintiff's autism in any way, let alone a way that would facilitate his equal access to Defendant's programs, services, or benefits."  *Manson*, 2021 WL 2352285 at *4.  The court observed that the complaint relied upon a sole conclusory assertion that gainful employment would help him manage his autism.  *Id.*  Although the court acknowledged that removal of the licensure denial reports would aid the plaintiff's efforts to secure employment, the court reasoned

that "the same would be true for any person with a history of licensing denial, whether that person has a disabling medical condition or not." *Id.* The court underscored the lack of connection between the requested accommodation and the plaintiff's disability by contrasting his claims "with those in other cases where the link between the request and the disability is unmistakable." *Id.*; *see Constantine*, 411 F.3d at 499 (where the plaintiff requested additional exam time to accommodate her severe migraines), *Lamone*, 813 F.3d 508 (where the plaintiff requested the implementation of an online tool to allow disabled voters to mark their ballots electronically).

Similarly, here, Plaintiff's Complaint fails to allege a connection between his disability and the requested accommodation. As noted in Plaintiff's physician's note, functional limitations related to Plaintiff's depression include difficulty performing self-care activities, routine tasks, and "difficulties with memory, attention and concentration[.]" (ECF No. 1-3 at p. 1.) There are no allegations in Plaintiff's Complaint (or supplements thereto) upon which a reasonable inference or conclusion could be drawn that approval of his apprenticeship license would aid in management of his depression, or otherwise ameliorate on same. As Defendants note, Plaintiff's Complaint merely asserts that due to his "SSDI disability status, he could not risk full-time employment without losing housing and healthcare benefits." (ECF No. 1 ¶ 10.) While understandable, seeking an accommodation to maintain his benefits does not establish how the functional limitations of his disability would be managed by approval of an apprenticeship license. Thus, Plaintiff fails to allege a connection between his disability and the requested accommodation as required under Title II of the ADA and the Rehabilitation Act.

Accordingly, Plaintiff's claims for violation of Title II of the ADA and Section 504 of the Rehabilitation Act (Counts I and II) against Defendants MDH, the Board, and Defendant Malone in her official capacity will be dismissed.

### 2. *Count III – State Law Claim*

Count III of Plaintiff's Complaint asserts that "Defendants denied Plaintiff equal access to a professional license based on his disability[]" in violation of Maryland anti-discrimination law. As noted by Defendants, the statute cited by Plaintiff pertains to access to public services for individuals with limited English proficiency.  (ECF No. 21-1 at p. 8.).

State Government section 10-1103 provides:

> (a) Each State department, agency, or program listed or identified under subsection (c) of this section shall:
>
> (1) subject to subsection (b) of this section, develop a language access plan;
>
> (2) take reasonable steps to provide equal access to public services for individuals with limited English proficiency who need language assistance, including any oral, written, and sign language services; and
>
> (3) arrange for the translation of vital documents ordinarily provided to the public into any language spoken by any limited English proficient population that constitutes 3% of the population within the geographic area served by a local office of a State program.

MD. CODE ANN., STATE GOV'T § 10-1103(a).

Defendant argues that Count III of Plaintiff's Complaint should be dismissed for failure to state a claim because the "Complaint does not allege that [Plaintiff] has limited English proficiency or that he was discriminated on that basis."  (ECF No. 21-1 at p. 8.)  Again, Plaintiff failed to respond to Defendant's argument on this issue and thus concedes the point.  Even so, the court agrees that Plaintiff's Complaint contains no factual allegations that Plaintiff has limited English proficiency, that he was discriminated against on that basis, or that Defendants failed to comply with the above statute.

Thus, Count III of Plaintiff's Complaint will be dismissed for failure to state a claim.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, the Motion (ECF No. 21) shall be granted; and Plaintiff's Motion for Equitable Tolling of Filing Deadline (ECF No. 7) shall be denied as moot.[4,5]

February 11, 2026

/S/
_____
Julie R. Rubin
United States District Judge

---

[4] As the Complaint will be dismissed on the grounds discussed above, the court declines to address Defendants' argument regarding service of process.

[5] Defendants seek dismissal with prejudice. The court declines to dismiss this action with prejudice. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court").